Henby Gr. Smith, J.,
delivered the opinion of the 'Court.
Parham exhibited this hill against Randolph Fitz-hugh, and J. J. Pulliam, Ex’r, etc., to enjoin the execution of a judgment at law, recovered by Pulliam against Parham, in the Circuit Court of Fayette County, on the following writing obligatory:-
“Twelve months after date, we, or either of us, promise to pay Mrs. Jane Davis, at her residence in Tippah County, Mississippi, or to her order, four thous- and six hundred and sixty and 48-100 dollars, value received, money loaned at 10 per cent, per annum, which if not paid when due, shall draw 10 per cent, per annum until paid; and, if this note is not paid or renewed at the expiration of two years from date, and we. are sued, we promise to pay in addition to the above sum, Mrs. Jane Davis’ attorney, his commissions for collecting. Witness our hands and seals, this 22d January, 1860.
“Randolph R. Fitzhush, [Seal.]
“John PaRHám, (S.,) [Seal.]
“Mountain House, Tippah County, Mississippi.
“Indorsed: For value received, I indorse the within to John N. Pulliam. This 4th September, 1860.
“Jane Davis.”
*499 The action at law was commenced oh tfye 7th day of January, A. D., 1861, and the judgment was rendered on the 10th day of October, A. D., 1866. The pleas of the defendant were nil dehit, payment and set-off. The amount of the judgment was $7,702.66, embracing the principal debt, $4,660.28, and interest $2,-691.38, and attorney’s commissions, $350.
The pleadings and the proof in the case in Chancery, show the following facts:
Eitzhugh bought from Jane Davis a tract of land, and for the price, executed to her his four notes, running to maturity at one, two, three, and four years from their date. The first note was paid when due. When the second fell due, Eitzhugh, by agreement with Davis, took it up, and also the third note, and in lieu of the two, gave a new note, falling due at the time of the maturity of the third, and being for an amount, made up of the several amounts of the second and third notes, and interest calculated upon the second note at the rate of ten per cent, per annum, to the maturity of the new note. When this new note fell due, Eitzhugh, failing to pay it, took it up, and also the fourth of the original notes, and in lieu of the same, gave the writing obligatory upon which the judgment was rendered, which writing obligatory embraced the principal of the fourth note, and the principal of the new note given in lieu of .the second and third original notes, and interest on such new notes computed at the rate of ten per cent, per annum, upon the amount of the new note up to the date of the writing obligatory upon which the judgment was rendered.
It does not appear in the record, where the first *500 substituted s or- new note was made. The residence of Eitzbugh and Davis, the maker and payee, was, at the time, in Mississippi, and it is proper to presume, in absence of proof to the contrary, that the place of making was the residence of the parties to the note.
At the time the first substituted note was made, and also at the time of the making of the last substituted writing obligatory, the residence of Fitzhugh and Davis was in Mississippi, and the residence of Parham was in Tennessee, nearby, and the writing obligatory was made and signed by Fitzhugh in Mississippi, and was sent by Davis to Parham, for his signature, and was signed by him at his residence in Tennessee, and sent back to Davis in Mississippi.
By the law of Mississippi at .the time of these transactions, parties were authorized to stipulate interest upon debts and obligations of the kind herein, at the rate of ten per cent, per annum.
Parham was the surety of Fitzhugh upon the four original notes, and though appearing to be, upon the writing obligatory, a joint obligor with Fitzhugh, was, in fact, his surety.
Upon this state of facts, Parham will be required to pay the principal and interest of the three original notes, although it might be conceded that the accumulations of the principal and interest, made by the process of substitutions, be to some extent usurious. The rule , of equity is, to give relief against usury, only upon payment of the principal debt and lawful interest.
The main question is, whether there is any usury in the transaction.
The writing obligatory on which the judgment at *501 law is founded, does not disclose on its face an usurious undertaking, and is not, therefore, void. Upon its face, it purports to have been made and payable in Mississippi; the laws of which State authorise creditor and debtor to stipulate interest at the rate of ten per cent, per annum. The reservation of such interest in terms, does not, therefore, avoid the instrument.
Nor is usurious of itself, the stipulation to pay the attorney collecting, commissions, in case the debtor fail to pay the debt within the prescribed time, and be sued. Of itself, observe, such stipulution is not usurious so as to avoid the instrument upon which it appears. It may, perhaps, by proof be shown to be usurious. A device of any kind, the purpose of which is to enable the creditor to obtain for the use of the money, or forbearance of the debt, more than the lawful rate of interest, is usurious. And if such stipulation were shown by proof to have been designed to enable the creditor to obtain more than lawful interest, it would be usurious.
Observe, the stipulation does not, of itself, import usury. Usury is the taking more interest for the use of money, or forbearance of a debt, than the law allows. An usurious contract, is one which stipulates for the payment of more than lawful interest, for the use of money, or forbearance of a debt: 3 Pars. Contracts, Title, Usury.
Upon this instrument, nothing appears indicating or declaring that the creditor is to be paid, or receive more than the lawful rate of interest prescribed by the law of Mississippi. The contract of the debtor to pay *502 the attorney’s commissions, in case of suit upon default of payment of the debt, for the prescribed time, adds nothing to the amount of interest to be paid to the creditor. If the debtor pays the ten per cent, interest stipulated, and also pays the attorney’s commissions, the creditor has received no more than the ten per cent, interest. If he do not pay the attorney’s commissions, the creditor receives, to that extent, less than the ten per cent. • interest.
Certainly the Courts have been, and still are, vigilant to prevent usury being obtained under the cloak of collatteral advantages, stipulated for the benefit of the creditor. Thus, where a mortgage of land was made to secure a loan of money, and it was stipulated that the creditor should be bailiff, or receiver of the rents and profits, and be paid commissions on the amount, equity will not sustain the agreement, as to the commissions ; and perhaps the contract in this particular would be held to vitiate the whole contract, as usurious. The mortgagee creditor, may have with the debtor mortgagor, a contract, which the law will uphold as without taint of usury, that the creditor may appoint a bailiff or receiver to collect the rents, and to be paid by the debtor mortgagor: See 9 Ves. Ir., 272, etc.; 6 J. C. R., 6.
Whether contracts of this character be usurious or not, depends mainly upon the intent of the parties. If the design is to enable the creditor to receive more than the lawful rate of interest, the contract is usurious.
A familiar and apposite illustration may be found *503 in tbe daily practice of people. The creditor gives forbearance or delay of his debt, and for its security the debtor executes a deed in trust, with power to the trustee to sell upon default of payment of the debt, and stipulating for the payment of commissions to the trustee, in case of sale. No one supposes there is any usury upon the face of this instrument, or in such transaction. The trust deed is but a security for the debt, and the present obligation between Parham and Davis, is also a security- for the debt. The enforce-m?nt of either security upon the default of the debtor, imolves expense and cost. In the case of the trust de<d, the debtor may lawfully contract to pay the expense and cost incident to his default. No reason is obvious, why he may not so lawfully stipulate, in re-spec of the cost and expense of enforcing the security of tie kind between the parties here.
It is possible, that, under such stipulation, may be envehped usury. Upon its face, it does not so appear. If sc designed, it must be exposed by proof. The presurption of law is in favor of the legality of the contrats of parties. In the absence of proof, extrinsic or apprent on the face, such presumption must prevail.
Our conclusion then, is, that the stipulation to pay attorne-’s commissions, is not, of itself, usurious. The creditor may well contract that the debtor shall pay lawful interest, and also pay the attorney’s commissions, in case of suit upon default of payment of the debt. If both are paid by the debtor, the creditor gets no more th& lawful interest. If the contract be fully *504 executed as to both these clauses, and the money actually paid by the debtor, the creditor has no usury.
The next inquiry is, whether the pleadings and proofs disclose any usury in the transactions between the parties which finally developed into the writing obligatory, upon which the judgment was founded.
When the second of the four original notes fell due. it was taken up by making a new note, falling due ai the maturity of the third note, and of an amount mace up of the amount of the third note and of the secoid note, and of the interest at the rate of. ten per cent per annum, computed upon the amount of the secoid note, from the day it fell due to the maturity of tie new note. The operation of this transaction was, tlat it cancelled the third note, took up and extended ;he second note for twelve months, and added into the extension note the interest to accrue during the time of the extension. . In this there was nothing usuriou or unusual. It is the ordinary mode of extending )om-mercial paper, and incorporating into the principal of the new note, the interest accruing from the maurity of the old note to the maturity of the new note
When this new note fell due it was not paid. The parties agreed to extend it for twelve months, ad until the maturity of the fourth of the original notes. This was done by cancelling the new note ad the fourth note, and making in lieu of both, the find note or writing obligatory, which is the cause of le present controversy. This final note is composed of the amount of the fourth original note, and the did new *505 note, and interest at the rate of ten per cent, per an-num on said new note, from its maturity to tbe maturity of the said final note or writing obligatory.
In this there is no usury. Certainly it operated in the way of compound interest, giving interest upon what was originally interest. The interest embraced in what is designated the new note, became principal when that note fell due, and the parties might lawfully treat it as principal, and when extending it into the final note, stipulate for interest upon the principal.
It may be generally true, that equity will not give interest upon interest, or compound interest, in the absence of any stipulation between the parties to that effect. And it is possible, if Davis were here asking the aid of equity to enforce her demand, the Court would decline to give her aid, except upon terms of reducing the great accumulation of interest here shown.
It is, however, quite another thing for the debtor to ask the aid of equity to open a judgment at law and reduce the amount, when by agreement of the parties, interest already accrued had become principal, and as such principal had been allowed or stipulated to draw interest.
It certainly needs no citation of authorities, to commend to our ready assent, the proposition, that parties may lawfully agree to convert interest already due, into principal, and stipulate that principal so obtained, may be made to draw interest. And this is all which was done by the transactions between the parties in the present case: Hale vs. Hale, 1 Cold., 333.
Of the validity of the note as to Parham, so far as *506 depends on the agreement to pay interest at the rate of ten per cent, per annum, there can be no uncertainty. The facts, that Parham was the surety only of Eitzhugh, and that his residence was in Tennessee, and the place where he actually signed the note was in Tennessee, cannot, under the circumstances, bring the matter of his liability within the operation of, and dependent upon, the laws of Tennessee as to usury. The note was, in terms, made payable in Mississippi, and the principal maker and the payee resided in Mississippi, and the note was written and signed by the principal maker in Mississippi, and the laws of Mississippi authorize the reservation of ten per cent, interest upon a debt of this kind. The principle is of familiar learning, that the law of the place of performance, and where to be executed, determines the validity of the contract, where the parties stipulate with reference to the law of the place of performance, and not with a view to violate or evade the law of the place where the contract is made. Especially is this so, with reference to contracts as to the rate of interest to be paid. This Court has recently held, upon a thorough consideration of the question, that a contract made in Tennessee, to pay money in another state, and at a rate of interest authorized by the laws of such State, is valid, and will be enforced in the Courts of Tennessee, although such rate of interest was usurious under the laws of Tennessee, unless it be made to appear that the place of payment in the other State, was stipulated and arranged for the purpose of avoiding and violating the usury laws of Tennessee.
*507 Upon such principle, the note in controversy must be held valid, unless the fact, that Parham was surety only, takes it without the range of the rule. The argument of the counsel for Parham, is, that the contract of a surety is exceptional; and the assumption is, that such con-contract is governed as to its validity, by the law of the place where the surety resides and actually executes the contract. It may be conceded, that the character of the contract of a surety is, in some aspects, determined by the law of the place where made. As to its validity, however, and especially in a case of the kind in hand, the law of the place of performance, and with reference to which the contract was made, governs. ■ The contract of the surety is absolute and direct, that he will pay at the place designated. In the present instance, the contract shows upon its face, and the extrinsic evidence proves, that it was made, and by all the parties intended to be made, with reference to, and in conformity with the law of the place of performance. No reason is observed why the surety in a contract of this kind cannot lawfully bind himself, when both apparently and actually he stipulates with reference to, and in conformity with, the law of the place of performance.
It is supposed that the taint of usury or usurious intent, is, to some extent, cast upon the note, because of the expression on its face, that the consideration of the contract was money loaned, when, in fact, the consideration was an antecedent debt. In some circumstances, such untrue statement might be entitled to weight as evidence, indicating an usurious intent. Here, however, no consequence can be given to it as affecting the va *508 lidity of the contract of the surety. The actual contract made, was not usurious. It would be perverse to avoid a lawful contract, even if the parties supposed that it was unlawful at the time they were making it. The circumstance, however, does not necessarily indicate that the parties intended to make an unlawful contract. It may well be considered, that the money being due and payable, the parties looked upon the extension of the debt as substantially a loan of the mon-ney for the extended time. In the absence of proof that the parties intended an illegal act, the presumption is, that their act was legal, especially, where, in fact, the act was legal.
Our conclusions are:
1st, That a contract for a valid consideration, which stipulates for the payment of money at a future day, and to bear interest at the legal rate, after due, and that in default of payment and suit brought thereon, the debtor shall pay the attorney’s commissions for collecting, is not usurious of illegal, by reason of the clause as to the payment of the attorney’s commissions; unless it be shown by evidence that such clause was a device by which to enable the creditors to obtain more than the lawful rate of interest.
2d, That the contract of a surety, made in this State, upon a note payable by its terms in another State, and with reference to the law of the other State, and bearing interest authorized by the law of the State where payment is to be made, but exceeding the lawful rate of this State, is valid and binding upon the surety, and will bé enforced against him by the Courts *509 of this State; unless such contract was so made payable in the other State, for the purpose of evading the usury laws of this State.
3d, That equity will not aid the judgment debtor to open and abate the judgment, for the reason that the amount was made up in part by interest which had, by contract of the parties, been converted into principal after the interest so converted had fallen due and was payable.
4th, It is not usury, in extending a debt over due, to include lawful interest for the extended time, as principal in the note, and to stipulate for lawful interest on the amount of the note after due.
These conclusions dispose of this case.
It is proper to state, that Chancery will not give relief on the ground of usury, against a judgment at law, where the debtor could have made his defense at law without embarrassment, had he chosen so to do. And in the case in hand, the Court of Equity would have declined to take cognizance of the matter of .complaint here, had the defendant in the bill taken the objection by demurrer, or other proper mode: 3 Hum., 561; 3 Cold., 477.
Reverse the decree of the Chancellor, as to such part as denies to the defendant the $350 attorney’s commissions, and affirm the decree as to the residue.